JOHN M. MILLER *vs.* GEORGE N. MACKENZIE and others.

*Bankruptcy—Effect of a Composition with Creditors upon a pending Attachment.*

On the 4th of November, 1874, a creditor sued out of the Court of Common Pleas, an attachment as mesne process against G. N. M., C. B. M., and C. T. M:, partners in trade. Upon the 5th of December, 1874, the defendants were duly adjudicated bankrupts upon the petition of their creditors filed 25th November, 1874. After said adjudication, a meeting of the creditors of the bankrupts was called under the amendatory Act to the National Bankrupt Act, section 17, approved June 22nd, 1874. At this meeting, at which the plaintiff in the attachment, although present took no part, and did not vote upon, or sign the resolution, a resolution for composition of the debts of the defendants was passed and confirmed under the provisions of said Act, and the statement required by said Act was produced and therein the name and address of the plaintiff, and the amount of the debt due him was shown. The resolution and statement were presented to the Judge of the District Court of the United States for the Maryland District, and said Court caused the resolution to be recorded and the statement to be filed. The amount properly due the plaintiff under said proceedings for composition was duly tendered to him, and by him refused. All the other creditors accepted the proposition and were paid. Upon a motion to quash the attachment, it was HELD:

1st. That the above recited facts presented all the essential conditions of a composition under the 17th section of the said Act of Congress.

2nd. That the exclusive jurisdiction of the Courts in Bankruptcy, in matters of bankruptcy, must compel the State tribunals to respect the composition of creditors adopted under the sanction of the Courts in Bankruptcy in conformity with the provisions of the Bankrupt law.

3rd. That the debt of the attaching creditor was extinguished by the composition, and the attachment fell to the ground.

APPEAL from the Court of Common Pleas.

The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*Joseph P. Merryman,* for the appellant.

The jurisdiction of the State Court having attached before the adjudication in bankruptcy, cannot be divested except in a clear case. There was no such clear case here. The power of Congress over State proceedings for the collection of debts, is only implied from the express power to legislate upon the subject of bankruptcy. And the implied power to annul State attachments or other judicial proceedings ought not to be exerted, where, upon general principles of interpretation, it was not intended. *Sturges vs. Crowninshield,* 4 *Wheat.,* 193, *et seq.; Cader, et ux vs. Ball,* 3 *Dall.,* 386; *Williams vs. Smith,* 4 *H. & N.,* 562; *Taylor vs. Carryl,* 20 *How.,* 596-7.

The language of the 14th section of the Bankrupt Act of 1867, relied upon by the appellees, is clear and precise. It is, that upon *the assignment,* the property of the bankrupt *shall vest in the assignee* by operation of law, "although the same is then attached on *mesne* process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings." *Revised Stat., sec.* 5044.

The attachment on *mesne* process is dissolved, according to the provisions of this section, by the assignment to the assignee under the hand of the Judge or register, and not by the commencement of proceedings for adjudication in bankruptcy. So long as the property remains in the hands of the bankrupt, the lien of attachment is valid. *In re C. H. Preston,* 6 *Bank. Reg.,* 547; *Corner vs. Mallory,* 31 *Md.,* 474.

The title to the property attached vests in the assignee when the assignment to him is executed, and it is by virtue of this assignment alone that he acquires the right to immediate possession, with its consequences of the dissolution of attachments, &c. *Johnson vs. Bishop,* 8 *Bank. Reg.,* 533; *Same Case,* 1 *Wool,* 324; *Wright vs Johnson,* 8 *Blatch.,* 150; *Fisher vs. Vose,* 3 *Rob.,* (*La.,*) 457; *Kittredge vs. Emerson,* 15 *N. H.,* 227.

The amendatory clause of the act of 1874, providing for a composition with the creditors of the bankrupt, (Rev. Stat., 5103, A.) which was availed of by the appellees in this case, does not contemplate an assignment to an assignee but leaves the title to the estate of the bankrupt in the bankrupt.

The Bankrupt Act of 1867, (sec. 14, *Rev. Stat.,* 5044,) vests the title to the bankrupt's estate in the assignee, because by the assignment, the assignee succeeds to the rights of the creditors as well as to those of the bankrupt. He acquires not only the rights of the debtor, but becomes the trustee for all the creditors. *Stevens vs. Earles,* 25 *Mich.,* 40; *Clark vs. Clark,* 17 *How.,* 315; *In re Hinds, et al.,* 3 *Bank. Reg.,* 91; *In re Kansas City Manuf. Co.,* 9 *Bank. Reg.,* 76; *Clerk's Office vs. Bank of Cape Fear,* 66 *N. C.,* 214; *In re Simeon Leland, et al.,* 10 *Blatch.,* 503; *Kane vs. Rice,* 10 *Bank. Reg.,* 469.

It is in consequence of the representative character of the assignee, leading him to protect impartially the interests of all parties to the proceedings, that the Bankrupt Act of 1867, section 14, vests in him the title to the bankrupt estate, by operation of law. When there is no such disinterested representative of the creditors, but the title to the estate is left in the bankrupt, the retrospective clause of the section, dissolving attachments, should not be exerted, unless it be shown that such effect was clearly contemplated by Congress. 1 *Black Com.,* 415-416; 1 *Tuck. Com.,* 3 *B,* 1; *Baugher vs. Nelson,* 9 *Gill,* 299; *Bac. Abr.*

*Stat.*, (*C;*) *Moon vs. Durden*, 2 *Exchq.*, 25 ; *Marsh vs. Higgins*, 9 *Man.*, *G. & S.*, 563 ; *Dash vs. Van Kleeck*, 7 *Johns.*, 477 ; *Dulany vs. Tilghman*, 6 *G. & J.*, 461.

The object of the Bankrupt Act of 1867, was two fold : Primarily to secure a just distribution of the bankrupt's property among his creditors, and secondarily the release of the bankrupt from the obligation to pay the debts of those creditors. The intent of the amendatory Act of 1874, (*Rev. Stat.*, sec. 5103, *A*,) was to provide a speedy and satisfactory mode of effecting this end, by a composition among debtor and creditors, without the necessity for an actual adjudication of bankruptcy. It is optional with the debtor to offer a composition, and with a majority in numbers and three-fourths in value of the creditors, to accept the offer. The election of the requisite number of creditors is determined by their interest. They are informed by the statement of the debtor of all liens against his property, and exercise their option with a full knowledge of all the facts.

It cannot be that the Act intended an election made by a majority of the creditors under such circumstances, was to divest the vested rights of a minority, which decline to surrender their liens. *Wilson vs. Bank of St. Paul*, 1 *Am. Law Times*, *N. S.*, 1.

*George G. Hooper*, for the appellees.

After the compliance with all the requisites of said amendatory Act, the debt due the appellant was reduced to 25 per cent., and upon tendering said amount and the costs, the appellees were entitled to have said attachment quashed. A creditor whose name, address and amount of debt appears in said statement, (as the appellants' did,) will not, against the express language of the statute, that " the provisions of such composition shall be binding upon " *him*, be allowed to press an attachment suit for the full amount of his debt. The compo-

sition is a substitute for the ordinary proceedings and discharge. *In re Alphonse Bechet*, 12 *B. R.*, 201; *Same Case*, 7 *C. L. N.*, 243.

The position of the appellant from the institution of his suit to the present, has been in antagonism with the main object of the Bankrupt Act, viz: the just distribution of a bankrupt's property between all his creditors. It is an attempt of one creditor, by a suit based upon an alleged act of bankruptcy, to obtain for himself payment in full, at the expense of the other creditors. The bankrupts having paid the amount of the composition to all the other creditors are virtually the purchasers of their respective interests in the estate, and if the appellant can by his attachment obtain more than the rate of the composition, so much less are the respective interests of the other creditors diminished. The composition estimates the value of the estate, for if a composition does not pay as much as the bankrupt's estate will pay, or can reasonably be expected to pay, then it is not for the best interest of all concerned, and will not be confirmed. *In re Rieman & Friedlander*, 11 *B. R.*, 21.

Any objection the creditor may have to the composition should be made before the resolution of composition has been confirmed and ordered to be recorded, otherwise it is too late. And it follows, that if he allows the composition to be confirmed by the proper Court, he cannot collaterally examine into the propriety or validity of it.

Bowie, J., delivered the opinion of the Court.

On the 4th of November, 1874, the appellant sued out of the Court of Common Pleas, an attachment as mesne process, against G. N. Mackenzie, C. B. Mackenzie and C. T. Mackenzie, partners in trade, which was returned by the sheriff, "*laid as per schedule.*" The defendants at January Term, 1875, moved to quash the attachment, for various reasons assigned, and afterwards on the 21st of

Miller *vs.* Mackenzie, *et al.*

May, 1875, filed a special plea, alleging that the defendants were duly adjudicated bankrupts upon the 5th of December, 1874, upon the petition of their creditors, filed the 25th of November, 1874; that after said adjudication a meeting of the creditors of said defendants was duly called under the amendatory Act to the National Bankrupt Act, section 17, approved June 22, 1874; that at said meeting at which the plaintiff, although present, took no part, and did not vote upon or sign the resolution, a resolution for composition of the debts of said defendants for 25 per cent. cash, was duly passed and confirmed under the provisions of said Act, and the statement required by said Act was duly produced, and therein the name of the plaintiff, his address and the amount of debt due to him were duly shown; that said resolution and statement were duly presented to the Judge of the District Court of the United States, for the Maryland District, and said Court duly caused said resolution to be recorded and the said statement to be filed; that the amount of money properly due said plaintiff under said proceedings for composition was duly tendered to him, and by him refused, and all the other creditors have accepted said proposition and been paid.

It was agreed by the counsel for the plaintiff and defendants, in the Court below, that the motion to quash should be set down for hearing, upon a statement of facts, substantially the same, as those embodied in the plea, and which we deem it therefore unnecessary to recite. Whereupon the Court on the 22nd of May, 1875, ordered that the attachment be quashed, from which order the plaintiff appealed. On behalf of the appellant it is insisted, that the jurisdiction of the State Court, having been asserted before the adjudication in bankruptcy, it cannot be divested except in very clear cases. That the power of Congress over State process for the collection of debts, is implied from the express power conferred on it, to legislate on the subject of bankruptcy, which implied power should not be extended by construction.

The appellees on the other hand contend, that the claim of the appellant, is in direct conflict with the main object of the Bankrupt Laws—the just distribution of the bankrupt's assets among all his creditors. " That it is an attempt of one creditor, by a suit based upon an alleged act of bankruptcy, to obtain for himself payment in full at the expense of the other creditors." * * * * *

It is argued that bankrupts who pay the amount of the composition to all the other creditors, are virtually the purchasers of their respective interests in their estates, and if the appellant, can by his attachment, obtain more than the rate of composition, so much the more, are the respective interests of the other creditors, diminished.

The statement of facts admitted, upon which the motion to quash was submitted and decided by the Court below, embraces substantially all the essential conditions, of a composition among the creditors of a bankrupt, prescribed by the 17th section of the Act of Congress of 1874, amendatory of the Act to establish a uniform system of bankruptcy throughout the United States. It is declared by the provisions of the same section, that the composition accepted by the resolution of the creditors, "shall be binding on all the creditors, whose names and addresses and the amounts of the debts due to whom, are shown in the statement of the debtor, produced at the meeting, at which the resolution shall have been passed, but shall not affect or prejudice the rights of any other creditors." By another clause of the same section of the supplement to the Act, "the provisions of any composition made in pursuance of the Act, may be enforced by the Court, on motion made in a summary manner, by any person interested, and on reasonable notice; and any disobedience of the order of the Court, made on such motion, shall be deemed to be a contempt of Court."

The 8th section of the 1st Art. of the Constitution of the United States declares, "The Congress shall have power to establish uniform laws on the subject of Bank-

ruptcies throughout the United States." Chief Justice MARSHALL, in the case of *Sturges vs. Crowninshield,* in defining the subject, says it is divisible in its nature into bankrupt and insolvent laws; "that laws which merely liberate the person are insolvent laws, and those which discharge the contract are bankrupt laws." 4 *Wheaton,* 194.

If the composition, as we have seen, binds the plaintiff as one of the creditors of the appellees, there can be no doubt, that the plaintiff's claim is discharged; the debt is extinguished; otherwise the Bankrupt Law, would be virtually annulled by the process of attachment, pending but not matured at the institution of the proceedings in bankruptcy.

The cases cited by the appellant, confirmed the conclusion which we should deduce from general principles. In the case, *In re Preston,* 6 *Nat. B. Register,* an attachment was laid on the 20th Feby., 1871; on the 4th of March, there was an order of sale, to prevent loss by delay; on the 18th of March, the defendant Preston filed a petition in bankruptcy; on the 20th, sale was made and money deposited. A special case was submitted to the Court—the U. S. District Court for Washington Territory. To the question whether the filing of the bankrupt's petition on the 18th of March, dissolved the attachment, and rendered null and void, the sale and all proceedings thereunder? the Court said, "the attachment was dissolved from the date to which the assignment in bankruptcy relates; that is, from the time of the commencement of bankruptcy proceedings. The operation of the assignment in reference to the attachment was not to avoid it, '*ab initio,*' but to arrest all proceedings under it, to dissolve it as of the date of the filing of the petition in the Supreme Court; to leave untouched all previously accrued rights, to prevent the subsequent accrument of rights under the attachment."

The case of *Johnson vs. Bishop*, 8 *Nat. Bankruptcy Register*, 533, as condensed in the syllabus, decides, where property has been attached by an officer of a State Court on mesne process, within four months prior to the commencement of proceedings in bankruptcy, the attachment is dissolved by the Bankrupt law; but the assignee in bankruptcy must apply to the State Court to have the officer directed to turn over the property, and not to the Federal Court. "This rule has been established to avoid conflict of jurisdiction, and through the comity of Courts exercising jurisdiction in the same territory, over the same subjects, and often the same classes of litigants, and drawing their existence from different sources, and which are to one another as foreign tribunals." *Corner vs. Mallory*, decided by this Court, 31 *Md.*, 471, recognizes the same general principles.

There is not in this case, any assignee to represent the debtor in the attachment suit, or to claim the property attached, or its proceeds by virtue of the assignment. But the same reason which compels the State Courts to recognize the authority of the Courts in Bankruptcy, in cases of assignment, that is, the exclusive jurisdiction of those Courts in matters of bankruptcy—must compel the State tribunals to respect the composition of creditors adopted under the sanction of the Courts of Bankruptcy, in conformity with the provisions of the Bankrupt Law. The debt of the attaching creditor is extinguished by the composition, and the attachment of course falls to the ground.

*Judgment affirmed.*

(Decided 6th January, 1876.)